JAMES CONNELLY, Appellant, *v.* CUNARD STEAMSHIP COMPANY, LTD., Respondent.

*Master and servant — negligence — action to recover for injuries sustained by plaintiff while stowing steel rails in defendant's ship, due to breaking of link in chain — judgment for defendant affirmed.*

Appeal by the plaintiff from a judgment of the Supreme Court in favor of the defendant, entered in the New York county clerk's office October 14, 1921, upon the verdict of a jury, and also from an order entered October 13, 1921, denying a motion to set aside the verdict and for a new trial.

Judgment and order affirmed, with costs. No opinion. Present — Clarke, P. J., Smith, Merrell, Greenbaum and Finch, JJ.; Smith and Greenbaum, JJ., dissenting.

GREENBAUM, J. (dissenting): On January 11, 1921, plaintiff was working as a longshoreman in one of the holds of the defendant's steamship *Vellavia*, stowing railroad rails, which were being put on board from a lighter alongside. There were two rails in each draft, held together in a chain sling. The rails were from forty-five to sixty feet in length and weighed about 1,500 pounds each. While one of these drafts, consisting of two rails, was being lowered, and after it had been swung on board from the lighter, and while directly over the hatch and being lowered, the lower end of the rails being then about three feet below the coamings of the hatch, one of the links of the chain sling, to wit, the one which held the hook, known as the crown link, suddenly broke, precipitating the rails into the hatch and resulting in the injury of the plaintiff. The evidence established that the defendant maintained on the dock a storehouse, which contained equipment furnished by the defendant for the use of its men, and which was in charge of a storekeeper whose duty it was to deliver to them, upon the request of the head stevedore, the appliances necessary for the given work which they were to perform. The evidence is that the storekeeper was asked for chains for the loading of the iron rails, and he furnished them with four or five chains, the precise number being in dispute. The storekeeper, who was one of defendant's witnesses, testified that he was asked to give " the heaviest chains you have got for steel." The same witness testified that the chains used had stamped on them the " Cunard name and also the capacity and the weight of the chain." A number of witnesses testified that the chain which broke was lighter and thinner than the others, and some of them testified that all of the chains were too light for the work to which they were put, and others that the chain in question was rusty. The complaints as to the lightness of the chains were made to one Dacey, who was in immediate charge of the work and who corroborated the fact that the complaints had been made, adding that his comment was that the chains " were the best they had and the only ones they had." He also testified that he " was not supposed to know what a chain is to carry." There is no testimony in the case tending to show that the plaintiff heard any of these complaints, and it also appears that he had nothing to do with the selection of the chains which were used in the stowing of the cargo. Shortly after the accident a portion of a broken link was picked up in the hold, and the defendant's witness Dacey testified that he was the one who picked it up. It is also in evidence that the broken chain itself, *i. e.*, the chain from which a link broke and caused the accident, was returned to the storekeeper on the day

of the accident, and that at the time of the trial it was in defendant's possession in its storehouse on the dock. Dacey identified a broken link, which was produced in court, as the one he had picked up, although there was no evidence where it had been kept since the accident. The testimony of plaintiff's witnesses as to the identity of the piece of broken link in question was that it was not a part of the broken chain which caused the accident. The link was allowed to go in evidence over plaintiff's objection that it was " incompetent in that it was not sufficiently identified as the one that came from the chain used at the time of the accident." The defendant did not produce in court the broken chain. Defendant, however, called a witness, who was a consulting engineer of forty-five years' experience, who testified that he had made a study of the tensile strength of iron, steel and other metals. He was shown the broken link in evidence and asked, what " in your opinion brought about the state of crystallization which you find at the broken ends of that link," to which he replied, over the objection and exception of plaintiff's counsel, as follows: "A crystalline fracture, such as this that I hold in my hand, is brought about by shock or sudden disruption of the parts, as distinct from a slow or gradual disruption of the parts, and these two fractures here are certainly due to what I describe as an impact blow or sudden disruption of the metal by a shock." When asked whether he could state what caused such a shock, he answered: " The dropping of a load over a short distance or space will produce such an impact, shock or hammer blow. * * * I mean a sudden release of the load, arrested by the chain. Q. I see, in other words, a short drop and then a sudden stop? A. A sudden stop, arrested by the chain." There, however, was no testimony in the case of any such sudden stop or shock preceding the break of the link. In his charge to the jury the learned trial justice said: " It is for the jury to determine and say, from the evidence, whether the broken link produced in court was in fact the link of the chain which broke, and whether the chain itself was of the size and character of the broken link produced; and in that connection the jury may consider the evidence that the rest of the chain is now and has been ever since the accident in the defendant's possession; I mean except for the other half of that link, which apparently has disappeared, according to the testimony of the defendant and that the defendant has not produced the rest of the chain before you." The court also charged as follows: " The defendant has not furnished you with any evidence, any direct evidence, or any other cause of the accident, than that claimed by the plaintiff. The defendant has, *by argument, said that some error in handling, presumably by a winchman, causing a shock, was the only thing that could have caused this break, and therefore this injury; and if you find that is so then, as I have told you before, you must find for the defendant.* They put an expert on the stand, who gives you various measurements and various computations, and he tells you that under the circumstances this break could not have been caused by the inadequacy, that is, insufficiency in strength, of this chain and this link, and must have been caused by some shock. He points to the crystalline nature of the break in the exhibit furnished by the defendant, and the difference between the appearance of that and the fibrous appearance of the balance of the link. Now, of course, you must not reject circumstantial evidence, under certain circumstances. * * * Circumstantial evidence may be so strong that it excludes every other possibility. All I can do is to leave it to you under all the circumstances of this case, to decide what caused this accident. If what the plaintiff

claims caused this accident, the plaintiff is entitled to your verdict; if what the defendant claims caused the accident, then the defendant is entitled to your verdict." (Italics mine.) Plaintiff's counsel excepted to that portion of the charge which referred to the testimony of the expert, " as to the argument of shock being the cause of the break of the link and that if they find that was so their verdict must be for the defendant." Counsel then asked the court to charge in that connection " that there is absolutely no evidence in the case that the load was moved in any unusual manner, or subjected to any undue strain." The Court: " I have told them that in substance and that is the only reason why I refused to make that charge in those words." It seems to me that the effect of this charge was to instruct the jury that they might speculate in finding that the chain in question broke because of a sudden shock, although there was no proof that the chain received any such shock on the occasion when the accident happened. Counsel then asked the court to charge " either in substance or in the language in which asked, the eighth request," which the counsel had handed up to the court. The Court: " I decline so to charge, for the reason that I feel that it is sufficiently covered by my charge of the seventh." To the refusal to charge as requested the plaintiff's counsel excepted. The seventh request to which the learned court referred reads as follows: "*Seventh.* That it is for the jury to determine and say from the evidence whether the broken link produced in court was in fact the link of the chain which broke, and whether the chain itself was of the size and character of the broken link produced; and in that connection, the jury should consider the evidence that the chain is now and has been ever since the accident in the defendant's possession and that it has stamped upon it the weight which it is supposed to sustain, and that the defendant has not produced the chain *before it.*" The eighth request reads: " *Eighth.* That where either party is in possession of evidence bearing upon a material point and the possession of such evidence is shown during a trial and the party fails to produce the evidence or witness, the jury have a right to infer that such evidence or the testimony of such witness would be unfavorable to the party's claim or contention." I am of the opinion that the court was in error when it said that the eighth request " is sufficiently covered by my charge of the seventh." In the seventh request plaintiff's counsel had asked the court to charge *inter alia* that the jury should consider that the chain had " stamped upon it the weight which it is supposed to sustain," but in the charge there was no reference made to the fact that the weight of the chain was stamped thereon. Moreover, even if the seventh request had been charged in its entirety, it seems to me that the plaintiff was entitled to have the eighth request charged. The seventh request merely stated that the jury had a right to " consider " the defendant's omission to produce the chain. The eighth request amplified the seventh request by explaining how the jury may apply the rule of law applicable to a case where a party fails to produce material evidence in his possession, that the jury have a right to infer that such evidence " would be unfavorable to the party's claim or contention." It also seems to me that upon all the proofs the verdict was against the weight of the evidence. I am of the opinion that the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event. Smith, J., concurs.